```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                  :
GOUCHER COLLEGE
                                  :

     v.                           :   Civil Action No. DKC 21-0511

                                  :
CONTINENTAL CASUALTY COMPANY,
et al.                            :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising out of a commercial insurance dispute is Plaintiff's motion to remand. (ECF No. 9). This is one of a burgeoning number of cases arising from the COVID-19 pandemic raising coverage questions under various insurance policies. *See, e.g., McDaniel Coll., Inc. v. Cont'l Cas. Comp.*, No. RDB 21-0505, 2021 WL 2139404 (D.Md. May 26, 2021). Plaintiff is seeking coverage for losses caused by the limitations on campus activity during the pandemic. After its insurance carrier denied liability, Plaintiff sued both the insurance company and its broker in state court, alleging alternatively that the policy covers the losses, but if it does not, the broker is liable for failing to procure the proper coverage.

Defendants CNA Financial Corporation and Continental Casualty Company (collectively "the Insurer") removed this action from the Circuit Court for Baltimore County on the basis of diversity of

citizenship. They recognize that another defendant named by Plaintiff, Riggs, Counselman, Michaels & Downes, Inc. ("RCM&D"), shares the same citizenship as Plaintiff and its presence deprives the action of complete diversity. They argue, however, RCM&D was fraudulently joined, and its presence should be ignored. In doing so, however, they misconstrue and misapply the relevant caselaw. RCM&D was properly joined, and its Maryland citizenship defeats complete diversity. The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. The motion to remand will be granted.

## I.   Background

Goucher is a Maryland corporation with its principal place of business in Towson, Maryland. It operates as a private college that enrolls over 2,000 students a year. Its complaint explains the college's various sources of revenue, including fees generated by providing "room and board" to those living on campus and from tuition (its "largest sources"), as well as leasing and renting its "physical space" to third parties (including the "Athenaeum" – a 100,000 multiple-purpose facility), and its sponsoring of "Year-Round" athletic (both interscholastic and intramural) events and "similar extra-curricular offerings."

Starting in 2006, Goucher hired RCM&D "to serve as its producer in connection with its insurance needs." Since then, it has continued to serve Plaintiff as its trusted insurance advisor

2

and insurance producer.  In this role it has "regularly analyzed Goucher's risks and exposures, alerted Goucher of those ricks, advised Goucher on how to protect itself from such risks through available insurance coverage, and procured insurance for Goucher to cover" the "risks and exposures" it has helped identify.  The contract is attached to Plaintiff's complaint.  (ECF No. 4-3).

In December 2019, to protect these various sources of revenues, Goucher purchased an "all-risks" insurance policy (the "Policy") from the Insurer "on advice and counsel" from RCM&D.  This policy required a premium payment of $1,936,360 and was meant to "protect against property loss and damage, business interruption losses and other risks identified by RCM&D, who acted as Goucher's producer on the Policy."[1]  Goucher alleges that it "relied on RCM&D to identify and obtain the Policy" and that it "should have known that exposure to losses from viral diseases (such as outbreaks on campus of SARS and viral meningitis) was a significant risk Goucher faced."

The Policy came into effect on December 1, 2019, and was effective for a year and a day, with a termination date of December 1, 2020.  The Complaint explains that, by its terms, it covers the entirety of Goucher's campus, as well as all buildings, facilities,

---

[1] Plaintiff notes that the Policy, No. 6023245110, states that the issuing company is Continental, but states that it is a "CNA POLICY."  (ECF No. 4-1).

3

and structures it owns or rents.  Plaintiff emphasizes the language in the Policy that states, "this [P]olicy insures against risk of *direct physical loss of **or** damages to* property and/or interests described herein at covered Locations."  (ECF No. 4-1, at 19) (emphasis added).  Plaintiff argues that this language is "deliberately designed to be broad" and to cover an "unlimited scope of 'risks.'"  Further, Goucher argues, the Policy *does not* contain "one of the virus exclusions that had become commonplace in the decade-and-a-half after the SARS outbreak."  Plaintiff complains that the COVID-19 pandemic subsequently has caused "physical damage" to Goucher because it "physically contaminates property" and Plaintiff has been forced to suspend virtually all on-campus events and to close its dormitories and classrooms. (ECF No. 4, at 3-4)[2] (quoting Governor Larry Hogan).  Plaintiff estimates its total losses at "tens of millions of dollars," but asserts that the Insurer has determined that such "property and business interruption claims do not trigger *any* coverage."

The Insurer denied Plaintiff's claim on September 8, 2020. On December 30, 2020, Goucher brought claims against both the Insurer and RCM&D in the Circuit Court for Baltimore County, Maryland.  Plaintiff alleges that the Insurer's refusal to pay for "loss and expenses" emanating from the COVID-19 pandemic

---

[2] Page number references reflect the number generated by the CM/ECF system, and not necessarily those on the document itself.

4

represents a breach of contract and "Lack of Good Faith." It also alleges that RCM&D, as its trusted advisor and one contractually bound to facilitate its insurance needs, committed: negligence, a breach of contract, and a breach of fiduciary duty. It makes a demand for damages "in excess" of $75,000, "plus pre-judgment and post-judgment interest, courts costs . . . [and] reasonable attorneys' fees incurred." (ECF No. 4, at 45-56).

On February 26, 2021, CNA and Continental filed a Notice of Removal, citing complete diversity of citizenship and an amount-in-controversy exceeding $75,000. They assert that CNA is a Delaware corporation with its principal place of business in Chicago, Illinois, and that Continental is an Illinois corporation with its principal place of business in Chicago, as well. Plaintiff is a citizen of Maryland, as is RCM&D. Nonetheless, RCM&D, these Defendants assert, should not be considered when assessing diversity because "it has been fraudulently joined." (ECF No. 1, ¶ 22) (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) and *Fish v. Cincinnati Ins. Co.*, 451 F.Supp.3d 420, 435 (D.Md. 2020)). They argue that, under the relevant standard, there is "no possibility that the plaintiff would be able to establish causes of action against [an] in-state defendant in state court." (*Id.*, at ¶ 23) (citing *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). The Insurer argues that any finding of liability against RCM&D is "contingent upon a judicial

5

determination that no coverage exists under the Policy," and the claims against it are, therefore, are "not ripe" for review under Article III of the U.S. Constitution.  (*Id.*, at 4-5)(citing *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, No. 20-665, 2020 WL 6537230, at *4-*5 (W.D.Tex. Nov. 5, 2020), *Interim R & R adopted by order* (W.D.Tex. Nov. 23, 2020) (ultimately granting judgment on pleadings to insurance company) *appeal docketed*, No. 21-50078 (5th Cir., Feb. 9, 2021) (appealing on grounds unrelated to the dismissal of the broker).

Plaintiff filed a motion to remand on March 29, 2021, arguing that Defendant RCM&D was properly joined and, therefore, complete diversity is lacking.  (ECF No. 9).  CNA and Continental filed their opposition on April 26, 2021 (ECF No. 14), and Goucher replied on May 17, 2021.  (ECF No. 15).

## II.  Standard of Review

28 U.S.C. § 1441 allows defendants to remove an action "brought in a State court of which the district courts of the United States have original jurisdiction."  Pursuant to 28 U.S.C. § 1332(a)(1), district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States."  A plaintiff that disputes the propriety of removal, may move to remand.

In considering a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Richardson v. Philip Morris Inc.*, 950 F.Supp. 700, 702 (D.Md. 1997) (citations omitted). This standard reflects the reluctance of federal courts "to interfere with matters properly before a state court." *Id.* at 701. When opposing a motion to remand, the party asserting subject matter jurisdiction "bears the burden of proof, by a preponderance of the evidence, to show the parties' citizenship to be diverse." *Zoroastrian Ctr. and Darb-E-Mehr of Metropolitan Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 748 (4th Cir. 2016) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 138, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.")).

"The 'fraudulent joinder' doctrine[3] 'permits removal when a non-diverse party is (or has been) a defendant in the case." *McGinty v. Player*, 396 F.Supp.2d 593, 597 (D.Md. 2005) (quoting *Mayes*, 198 F.3d at 461. The doctrine of fraudulent joinder allows a federal court to "'disregard, for jurisdiction purposes,' the citizenship of non-diverse defendants." *McFadden v. Fed. Nat'l*

---

[3] This phrase is a term of art and "a bit misleading, insasmuch as the doctrine requires neither a showing of fraud . . . nor joinder." *Mayes*, 198 F.3d at 461 n.8.

7

*Mortg. Ass'n*, 525 Fed.Appx. 223, 227 (4th Cir. 2013) (quoting *Mayes*, 198 F.3d at 461).

A party is fraudulently joined when "there is no *possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Hartley v. CSX Trans., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)) (noting that this is a **heavy** burden on the removing party: all issues of law and fact must be resolved in the plaintiff's favor, and the standard is even more favorable to a plaintiff than Fed.R.Civ.P. 12(b)(6)).  Even a "glimmer of hope" will suffice.  *Id.* (citing *Mayes*, 198 F.3d at 466).

### III. Analysis

#### A.   Remand

The parties agree that Maryland substantive law applies to both the tort and contract claims, although they are less precise with regard to the "ripeness" issue.  As will be seen, success on at least one of the state law claims is not a legal or factual impossibility.  The Insurer primarily relies on *Fish*, 451 F.Supp.3d at 430 to stand for the proposition that there is "no possibility that the plaintiff could establish a cause of action against the defendant-broker at the time of filing."  (ECF No. 14, at 8).  It highlights that the plaintiff in *Fish* alleged that "if no insurance contract is found to govern the dispute, [then the broker] 'owed

8

a duty to [the insured] on how to apply for the insurance from [the defendant insurer],' and '[the broker] breached its duty when it submitted the application for insurance for [the p]laintiff . . .'" (ECF No. 14, at 8) (citing *Fish*, 451 F.Supp.3d at 435). It argues that, "This contingent pleading language is nearly identical to the language used by Plaintiff in this case" and so should similarly counsel for finding fraudulent joinder. (*Id.*, at 8); (*see, e.g.,* ECF 4, ¶ 16) ("To the extent that Policy is found not to cover Goucher's losses . . . then RCM&D failed Goucher in its essential tasks . . . .").

As Plaintiff points out, however, such a comparison glosses over key factual distinctions in *Fish*. This court has previously distinguished that case in this context:

> [*Fish*] involve[d] insurance on a boat owned by the plaintiff. There, Judge Bennett declined to remand a case that included a claim against Defendant HMS Insurance Associates, Inc. ("HMS") (an insurance broker) because "Plaintiff has no right to relief against Defendant HMS." The *sole* claim against the brokerage as an agent was "that HMS negligently obtained insurance in Plaintiff's individual name rather than his corporate name." The negligence claim against the agent was pled in the alternative, only "if no insurance contract is found to govern the dispute." This line of argument was deemed mooted because Cincinnati Insurance "admits that it entered into a contract of insurance with [the plaintiff,]" and it did not "assert any defenses to coverage based on allegations that [the Plaintiff's] vessel may have been owned by an LLC, of which he was the sole member." Thus, the alternative

9

>      negligence claim against the agent was not viable.

*Eremah v. Assurity Life Ins. Co.*, No. DKC 20-2069, 2020 WL 6154871, at *3 (D.Md. Oct. 20, 2020). Similarly, in a follow-up opinion issued in the *Eremah* case, the court found that Plaintiffs' *only* viable theory against the agent in question, based on the facts before it, would have been that he "improperly or inaccurately prepared the policy application" of the Plaintiffs. But it was clear that the plaintiffs' complaint only alleged a failure to pay out the proper life insurance proceeds as per the purported policy. The defendant, in turn, conceded that such a policy did exist, and that the agent in question was terminated before it decided to deny the Plaintiff's insurance claim. The court reasoned: "Based on the newly elucidated factual allegations, Plaintiffs cannot assert a claim against the agent for breach of contract. Because the insurance contract was issued, there can be no claim for breach of a contract to procure insurance coverage." *Eremah*, 2020 WL 6544833, at *4.

Conversely, in this case, Goucher *expressly* alleges that RCM&D was in breach of the *separate* contract between them and negligent in its failure to procure the correct policy. As Plaintiff points out, the Insurer, for its part, has made no concession that would moot Goucher's claim against RCM&D. To do so, as Goucher correctly explains, would be to concede that "all

of Goucher's alleged COVID-19 business interruption damages are covered by the Policy, and that the Insurer has no basis to deny Goucher's claim." (ECF No. 15, at 7). Obviously, this has not occurred.

Where such factual concessions have not barred the possibility of recovery, Maryland courts have upheld the validity of these kinds of claims against a broker. As Plaintiff correctly asserts, "Under Maryland law, it is 'generally accepted that when an insurance broker is employed to obtain a policy that covers certain risks and the broker fails: (1) to obtain a policy that covers those risks, and (2) to inform the [insured] that the policy does not cover the risks sought to be covered, an action may lie against the broker, either in contract or in tort.'" (ECF No. 9-1, at 9)(quoting *Int'l Bhd. Of Teamsters v. Willis Corroon Corp. Of Md.*, 369 Md. 724, 737, 802 A.2d 1050, 1057 (2002)); *see also Eremah v. Assurity Life Ins. Co.*, 2020 WL 6154871, at *4-*6 (recognizing the possibility that claims against a broker and insurance company can coexist when insurance benefits are denied, even where the broker is not covered by a separate agreement). Unlike in *Eremah*, moreover, RCM&D's conduct was governed by a separate contract with Goucher, making it even clearer that the claims against it, at least in contract, are viable.

11

The Insurer's ripeness argument falls short.[4] CNA and Continental's opposition primarily relies on *Terry Black's Barbecue* on this point, but as Goucher points out, the court combined its analysis of fraudulent joinder and ripeness and applied a "Rule 12(b)(6)-type analysis to determine whether a claim is stated under state law against the non-diverse defendant." (ECF No. 9-1, at 14-15) (discussing and quoting *Terry Black's Barbecue*, 2020 WL 6537230, at *3-*5). This is not the relevant standard in this district on the issue of fraudulent joinder. The standard set out by the Fourth Circuit "places a much higher standard on the removing party." (*Id.*, at 14) (citing *Hartley*, 187 F.3d at 424).

Even if such ripeness analysis is treated as a distinct (though interrelated) issue of subject-matter jurisdiction, Goucher's claims against RCM&D are indeed ripe. Plaintiff contends that, "[w]hile Maryland has not yet directly addressed this issue, a majority of the courts that have done so have concluded that an insured's claim against its agent or broker begins to accrue for limitations purposes on the date the insurer denies coverage – at the latest." (ECF No. 9-1, at 11) (citing, among others, *M.S.S. Const. Corp v. Century Sur. Co.*, No. 15 CIV 2801 ER, 2015 WL 6516861, at *12 (S.D.N.Y. Oct. 28, 2015)). In some instances,

---

[4] The state court ultimately may determine that this claim is not ripe, but all doubts must be resolved in favor of remand.

12

"federal ripeness law applies in federal court," but "the standard for ripeness under federal law is essentially identical to the standard under Maryland law." *Brewster v. Brennan*, 567 F.Supp.2d. 791, 796 n.4 (D.Md. 2008).  At a practical level, as observed by Judge Bennett, Maryland courts permit claims against the insurer and the broker to proceed in a single case.  *See McDaniel*, 2021 WL 2139404, at *4 (citing *CIGNA Prop. & Cas. Comps. V. Zeitler*, Md.App. 444 (1999) and *Eremah*, 2020 WL 6154871).

It is correct that *some* other jurisdictions, such as the Southern District of Florida, have held claims against a broker are premature where the underlying insurance coverage has yet to be determined.  *See, e.g.*, *JWC Hamptons, Inc. v. Empire Indem. Ins. Comp.*, No.: 0:19-cv-62232-RUIZ/SELTZER, 2020 WL 37571, at *2 (S.D.Fla. Jan. 3, 2020) (dismissing a claim against an insurance broker, because, "[T]he viability of [the plaintiff's] claim against [a defendant] is entirely contingent upon the resolution of [its] claims against [the other defendant]," and a ruling against the insurer would foreclose recovery against the broker) (relied upon by the Insurer).  Nonetheless, the better view, held by an equal number of courts (if not the majority, as claimed by Plaintiff), is that claims against an insurer and the broker/advisor who selected the policy, may simultaneously lie. *See Netherlands Ins. Comp. v. Macomb Cmty. V. Macomb Cmty. Unit Sch. Dist. No. 185*, No. 18-cv-4191, 2019 WL 5420260, at *4-*6

(C.D.Ill. May 2, 2019) (explaining Fed.R.Civ.P. 8(d) allows for "[i]nconsistent legal claims" and that while claims against a broker in this context are akin to indemnity claims, considerations of judicial economy suggest such claims are ripe in either context); *Casa Besilu LLC v. Fed. Ins. Comp*, No. 20-24766-Civ-Scola, 2021 WL 1617107, at *6 (S.D.Fla. Apr. 26, 2021) ("failure to obtain desired coverage from an insurance carrier is a separate and independent cause of action in negligence from the claim against the insurer"); *Johnson & Towers, Inc. v. Corp. Synergies Grp., LLC*, No. 14-5528, 2015 WL 3889438, at *7 (D.N.J. June 23, 2015) (finding the "alleged failure to procure appropriate stop-loss insurance coverage" represented a cognizable "injury in fact" that was ripe alongside a claim seeking a declaratory judgment against the insurer that the Plaintiffs "are entitled to stop-loss coverage" under their policy). Goucher's tort and contract claims against RCM&D are ripe claims operating on independent theories of recovery, even if they are inconsistent with the claims made against CNA and Continental.

B. **Request for Attorneys' Fees, Costs and Expenses**

Plaintiff expressly requests "attorneys' fees, costs, and expenses" accrued from litigating this motion and cite Defendants' lack of an "objectively reasonable basis for seeking removal" as justification for this award. (ECF No. 9-1) (citing *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005) and *Hyatt v. Johns*,

14

No. GJH-16-2912, 2016 WL 8673870, at *3 (D.Md. Oct. 14, 2016)). In *Hyatt v. Johns*, Judge Hazel provides instructive discussion of the court's discretionary powers on this issue:

> In addition to requesting that this case be remanded to state court, Plaintiffs also request costs, expenses and reasonable attorney's fees that they incurred in defending this case against removal. When a Court grants an order to remand, it may also "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Although the case is being remanded, the Court will retain jurisdiction over the collateral issue of fees pursuant to 28 U.S.C. § 1447(c). *See Am. Cap*[.] *Advance, LLC v. Gordon*, No. RWT 10CV2113, 2010 WL 5055810, at *2 (D.Md. Dec. 3, 2010).
>
> In developing an appropriate test for awarding fees in a removal case, the Supreme Court noted that such a test "should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin*[], 546 U.S.[, at] 140. The Court went on to hold that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) *only where the removing party lacked an objectively reasonable basis for seeking removal*." *Id.* at 141. A showing of bad faith is not required . . . *See Am. Cap*[.] *Advance, LLC,* 2010 WL 5055810, at *2 (citing *Miller v. Baker,* 2010 WL 3585423, at *1 (W.D.Va. September 9, 2010))

*Hyatt*, 2016 WL 8673870, at *2 (emphasis added). Plaintiff asserts that the Notice of Removal "relied exclusively on one non-binding,

15

unreported, out of state and out of district decision to support its assertion that there is 'no possibility' that Goucher's claims against RCM&D would be considered ripe." (ECF No. 9-1, at 17) (referencing ECF No. 1, ¶ 24) (itself relying on *Terry Black's Barbecue*, 2020 WL 6547230, at *4-*5). Plaintiff argues that such argumentation in the face of purportedly clear caselaw to the contrary shows that "the Insurer lacked an objectively reasonable basis to remove Goucher's case to federal court on the basis of diversity jurisdiction under the fraudulent joinder doctrine."

This is a bit of an overstatement. As the Insurer rightly observes, this district has announced and affirmed that:

> "[A] plaintiff has every right to do all that is possible, within the bounds of ethical constraints, to ensure that his case remains in state court; a defendant has an equally defensible privilege to do all it can, under like constraints, to push or pull the action into federal court."

*Allen v. RBC Cap. Mkts., LLC*, No.: GJH-18-3971, 2020 WL 673027, at *3 (quoting *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 959 F.Supp.2d 783, 798 (D.Md. 2013)) (denying a "Motion for Attorney's Fees and Costs" and noting that a claim with "even the smallest degree of merit is well within the bounds of typical and predictable behavior in adversarial litigation."); *see also McGinty*, 396 F.Supp.2d at 601-02 (quoting *ITT Indus. Credit Co. v. Durango Crushers, Inc.*, 832 F.2d 307, 308 (4th Cir. 1987)) ("The

court's limited authority 'to award fees as a sanction for a removal taken in bad faith is widely recognized.'").

CNA and Continental easily clear this low hurdle as they had, at the time of removal, an objectively reasonable basis for removing the case to federal court.[5] Despite their misreading of *Fish*, 451 F.Supp. 3d at 435, their opposition does point to some jurisdictions that support their contention that this kind of purportedly "contingent" claim is unripe, and thus might not "state a claim for negligence against [the broker]." (ECF No. 14, at 12 & n.4) (citing *JWC Hamptons,* 2020 WL 37571 and other cases from the Southern District of Florida, as well as *Wausau Underwriter Ins. Co.*, CV-07-0056-EFS, 2008 WL 793618 (E.D.Wash. Mar. 24, 2008)). The Insurer also plausibly sought to distinguish other cases. The request for attorneys' fees, costs and expenses will be denied.

## IV. Conclusion

For the foregoing reasons, the motion to remand filed by Plaintiff will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[5] Whether there would be such a reasonable view going forward, in light of this decision and that of Judge Bennett's, is another question.